## Merrill, Appellant, *v.* Moore's Heirs.

The act of the legislature, which allows the administrator, as compensation for admin-
istering the estate, a certain per centage on the "appraised value," was intended to
embrace the whole estate administered, and is not confined to that portion of the
estate which is actually appraised.

The law does not impose onerous duties on men, without allowing compensation.

The allowance to the administrator by the probate court, as compensation for adminis-
tering the same, cannot be made until final settlement of the estate.

APPEAL from the probate court of the county of Adams.

This case came up by appeal from the probate court of Adams
county. The appellant became the administrator with the will
annexed of Robert Moore, deceased, in 1831. He managed a
considerable estate, raised two crops, and afterwards sold the real
estate. The appraised value of the estate was twenty-six thousand
three hundred and fourteen dollars, but the amount actually
received from all sources and administered was ninety-four thou-
sand eight hundred and sixty-three dollars. He made various
settlements with the probate court, but none of them were intend-
ed to be final, until that from which this appeal was taken in 1841.
At each of the settlements before the last, he was credited with
several sums, by way of commissions on the estate, amounting in
the whole to nine thousand eight hundred and fifty-one dollars.
These settlements were entirely disregarded in the final account.
The commissioners who, by consent of parties, were appointed to
make out the last account, made no allowance to the administra-
tor, but referred that subject to the probate court. That court
allowed the administrator ten per cent. upon the appraised value
of the estate, to be credited at the date of the final settlement.
From this order the appeal was taken.

Merrill, Appellant, *v.* Moore's Heirs.

QUITMAN and MCMURRAN for appellant.

By agreement and order of the court, two commissioners were chosen by the parties to examine and restate the whole of Dr. Merrill's administration of the estate of Robert Moore, on fair and equitable principles; to allow him all charges, whether strictly legal or not, so they were made in good faith, and all interest and commissions paid by him in good faith.

The parties, by the agreement and reference, constituted the commissioners their arbitrators, to determine every right and every claim, on either side, in any way connected with Dr. Merrill's administration of Robert Moore's estate, and also of James Moore's estate, so far as connected with the final settlement of Robert Moore's estate. And this these arbitrators were to do upon fair, liberal and just principles, regardless of any technical rules of law that might arise. What reason, then, can be alleged why they did not settle the compensation to be allowed Dr. Merrill for his services as administrator? This claim on his part was just as fair and equitable as to reimburse to him funds advanced for the estate. And that they believed Dr. Merrill entitled to commission they never doubted; for, in their report, they recommend that the commissions or compensation to Dr. Merrill shall bear date at the time the services were rendered, in consequence of the injustice that would otherwise be done to him, from the mode in which they made up the account between the parties, compounding the interest, or computing it with annual rests. But they conceived that this matter of compensation could not be determined by them; that it belonged exclusively to the probate court, and therefore they referred this very important point, with Dr. Merrill's liability for a note of H. Gridley, back to the probate court, to be adjudicated by it. We believe the commissioners erred most honestly in this; but it is an error, and a most serious one, as well as a deep injury to our client. He, in good faith and promptly, agreed to submit his whole administration to them, as soon as he ascertained that it was to be attacked; he agreed that they might compute interest by compounding it, although in law no interest was chargeable to him under the circumstances of this case; and when it comes to action, these gentlemen entertain the opinion that a most important part of his case, a heavy offset, (amounting, with

Merrill, Appellant, *v.* Moore's Heirs.

interest compounded from the time the services were rendered, to near the balance decreed against him in the probate court,) is not to be acted on by them, although a component part of the transaction; that it is referred back to the court with, however, a most strong and necessary recommendation, from the manner in which they stated the account, in reference to the interest.

We repeat then, that this course of the arbitrators is well calculated to do our client injustice. They examined every item of his administration account; they had his conduct and services as administrator distinctly in review, upon the facts, vouchers and proofs; they adopted their own mode of stating the account, and they are the best judges of his compensation, of what his services were reasonably worth. And, as this subject was referred to these gentlemen as fully for their action as any other in the reference, we insist that it shall be referred back to them for their action, with or without instructions. This ought to have been done by the probate court, upon the first exception taken to the report of these gentlemen. But as that court refused to do it, and the opposite party refused to remove, by an explanatory agreement, the scruples of the arbitrators as to their power to act on this branch of the case, we ask that it may be submitted to them, under the judgment of this court, and, whatever they shall allow us for compensation or commissions in administering the estates of Robert Moore and James Moore, as agreed to be embraced in this case, and however they may allow it, we will abide the result.

But whether we be right or wrong in our opinion upon the point just disposed of, whether this court decide that under the agreement and reference mentioned and the circumstances of this case, it ought to be sent back to the commissioners to ascertain and fix the compensation of the administrator with the interest on it, or to the probate court for that purpose, or that this court will act definitely upon the question; we are by no means averse to a discussion of the broad question involved in this case. Believing that the probate court grossly erred in its decision, we cheerfully submit our views of the rule furnished by our statutes for regulating the commissions or fixing the compensation of executors and administrators. Though the question to us is a plain one, it is, we conceive, the most important one in its general bearing that has

Merrill, Appellant, *v.* Moore's Heirs.

been submitted to this court for its decision at this or any other term of this court. It arises in the settlement of every estate and every guardian's account; and if the new, startling, and heretofore unheard of doctrine, broached by the opposite counsel, is to be entertained by this court, it is time that it should be promulged from this high tribunal, of last resort, that those undertaking these delicate, responsible and thankless trusts, may know what to expect and what to rely on in the settlement of their administration accounts. But we have no apprehension of any such decision in this court.

The question presents two points for our consideration. First. On what amount or portion of the assets of the deceased is the executor or administrator entitled to commissions for his services in administering the estate? And, secondly: At what time, or at what periods can those commissions be legally allowed to take effect?

In regard to the first point, we think that the statute law of this state is clear and explicit, especially as the practice of the courts of this state since the adoption of the law has been in conformity with this plain interpretation of it. There are but two provisions of our statute directly upon this question, to be found in Hutch. & How. Dig. 414, 415, sec. 96 and 101. The latter section gave the jurisdiction of this matter to the county court, which no longer exists, and allowed the minimum of commissions to be as low as one per cent. As we have no county court, we doubt whether this section is now in force; but in this case it is a matter of no moment, as the ninety-sixth section unquestionably is, and affords the same principle, which will govern in this case. That portion of the ninety-sixth section immediately applicable, is in these words: "And in all cases the court shall allow to an executor, administrator or collector, on the final settlement of his or her account, such compensation as shall appear to said court reasonable and just, for his or her services in administering the estate of the testator or intestate, not less than five nor exceeding ten per cent. on the amount of the appraised value of such estate."

Now, it is contended for the first trial, in the construction of this provision of the law, that commissions, as compensation to the administrator or executor, can only be allowed on the inventory

of the personal property, and not upon the whole amount or appraised value of the entire assets administered. Recollect that this position is at war with the practice and decisions of every court in the state that we have ever heard of, and also with the decisions of the judge of probate of Adams county until very recently, when he has changed his mind, as is set forth on the record itself. The construction which we contend for, on the contrary, is the construction placed upon the statute at the time, and which it has received ever since, except in this solitary instance of the probate court of Adams county; and that is, that the statute authorizes and intended an allowance of commission from five to ten, or from one to ten per cent. if you choose, on the whole amount of the estate administered, and accounted for by the executor or administrator on the final settlement of the administration. This cotemporaneous construction of the statute at the time it was made, as early at least as 1822, pursued and sanctioned by all the courts of every grade in the state from that time to this, is of itself a conclusive answer to the argument of the opposite counsel. Such is reason, and such is authority on this point. *Contemporanea expositis est fortissema in lege.* 7 Bac. Abr. 457. Title "Statute," letter I. rule 5; or 6 Bac. Abr. 384, same title, letter and rule in another edition, treating of the regard to be paid to the intention of the makers of a statute, in the construction of it.

And this brings us to the governing rule observed by all courts in every civilized country in the construing of the law. Courts are the expounders of the law, and when they have ascertained and fixed the intention of the legislature in enacting the law, its construction is determined. 7 Bac. Ab. 454, 7 Title Statute, I. Rule 5.

2 Mass. Rep. 475–478, Rogers *v.* Goodwin. In this case, although the opinion of the court inclined to vary from previous and long settled construction of a particular act, yet they adhere to the former decisions, and upon a most sensible and proper ground. In their own language: "The legal ground upon which this provision is now supported, is that long and continued usage furnishes a cotemporaneous construction which must prevail over the mere technical import of the words." If the court, therefore, should entertain any doubts about the correctness of our construc-

tion of our statute, we ask the benefit of this principle, recognized equally by English and American courts.

But again. If any man could entertain doubt as to the true construction of the provision of our law, which we have now under consideration, his doubts, in our opinion, will be forever removed if he will give ear to the rule, recognized by all law writers and courts of justice in the interpretation of laws, as "the most universal and effectual way of discovering the true meaning of a law, when the words are dubious," and that is by considering the reason and spirit of it, or the cause which moved the legislature to enact it. 1 Black. Com. 61; 6 Bac. Ab. or 7 Bac. Ab. according to the edition, Tit. Statute, letter I, rule 5, p. 384 or 457, &c.; 1 Kent's Com. 461.

Now, what was the cause that moved the legislature to pass the provision of the law authorizing the probate court to allow to an executor or administrator reasonable compensation for his services as such, not to exceed a commission of ten per cent? What was the defect intended to be remedied? What the object of the legislature? Unquestionably to remunerate the executor or administrator for his trouble, his labor, his expenses and his responsibility in administering. Such, indeed, is, in substance, the statute itself. At common law no compensation was allowed to guardians, executors or other trustees for their services. This was found to be too burdensome and delicate a duty to be properly attended to gratuitously. And the legislature, by the provision of the statute already cited, intended to correct this mischief, to repair this defect existing at common law. And it is the duty of our courts to construe the statute so as to suppress the mischief and advance the remedy. But if the doctrine of the opposite counsel be correct, then the mischief is only in part remedied, when neither the language of the statute requires such a lame and insensible construction, nor can any reason be assigned for such a construction. What motive can be assigned for such an act of legislation as would compensate an executor or administrator for administering the personal estate, the tangible personal property contained in the inventory and there appraised, but would authorize no compensation for administering the choses in action, collecting debts, selling lands where the personal property is insufficient, and col-

lecting the proceeds thereof and paying the debts therewith, or for raising crops of cotton and accounting for them from year to year, as Dr. Merrill did from year to year under the will of Robert Moore, as appears. by this record. The service of the executor or administrator in selling the personal property contained in the inventory, and realizing and disbursing the proceeds, or distributing it without a sale, is, to say the least of it, no greater than that of collecting the debts or choses in action belonging to the deceased, and disbursing the proceeds; or of raising or disposing of crops, or selling the real estate, collecting the proceeds and disbursing them according to law. Yet they are to be compensated according to a fair and equitable rule in the one case, and in the other they are to receive nothing. The inventory and appraisement of the personal property may not exceed one hundred dollars; the lands of the deceased, with the debts due him, may amount to one hundred thousand dollars; and when the whole real and personal estate has been administered to the satisfaction of all parties and ratified by the court, the executor or administrator is told that the laws allow him at most but ten per cent. on the one hundred dollars, and that the law does not allow him one cent for his administration of the one hundred thousand dollars. Surely a statute must be capable of no other construction, before the court would give it such an absurd and injurious one. How strikingly may we here apply the rule laid down by Blackstone in construing statutes as to their effects and consequences; that where words bear "either none, or a very absurd signification, if literally understood, we must a little deviate from the received sense of them." But in this case there is no need of such deviation to avoid the absurd signification contended for by the opposite counsel. 1 Black. Com. 61; 6 Bac. Abr. 385, or 7 Bac. Abr. 457–460.

Before we come to a critical examination of the phraseology of the statute under consideration, the absurdity and injustice of the doctrine of the opposite counsel will appear most glaring by a moment's reference to the facts contained in the record. The inventory and appraisement of the personal property of Robert Moore's estate amounted to twenty-six thousand three hundred and fourteen dollars, and the assets administered and accounted for by the ad-

24*

ministrator, amount to the sum of ninety-four thousand eight hundred and sixty-three dollars seventy-eight cents, showing a difference of sixty-eight thousand five hundred and forty-nine dollars seventy-eight cents, upon which it is gravely contended the administrator is to receive no commission. For the counsel opposed to ourselves agree with us, that the technical appraisement of an estate extends only to the personal property; it embraces neither the lands nor debts of the deceased. Rev. Code, page 48, sec. 71–72–73–74.

It is true, the executor or administrator is bound to return, on oath, an inventory of the money and debts of the deceased, but there is no appraisement of this portion of the estate, its "appraised value," to use the favorite words of the gentleman, can never arise; and therefore conclude the gentleman, it can form no part of the assets upon which commissions can be allowed as compensation; although it is his duty and his trouble to administer one part of the estate, as well as the other. Rev. Code, page 40, sec. 43; *ib.* 56–57, sec. 98–99–100, &c.

But the statute itself will not upon its face bear the interpretation contended for by the opposite counsel. What does the statute say? It does not say, that the compensation to the executor, administrator, or collector shall be measured by the appraisement of the personal property, or the value as appraised in the inventory. But it provides that he shall have such compensation as is reasonable and just; " in administering the estate of the testator or intestate, not less than five nor exceeding ten per cent. on the appraised value of such estate." What does the term " such estate" mean? What does it refer to? It refers to the preceding part of the clause, it refers to the estate administered, previously mentioned in the same section. And what estate has Dr. Merrill administered? Why, all the assets that have passed through his hands as administrator and been accounted for to the probate court, being ninety-four thousand eight hundred and sixty-three dollars seventy-eight cents; no matter whether it consisted upon the death of the deceased, of lands, negroes, debts, or crops of cotton raised by him. The language of the statute, it strikes us, is as plain as the reason and intention of the legislature are obvious. The word " estate," is the most comprehensive known to the law; it embraces every

Merrill, Appellant, *v.* Moore's Heirs.

species of property real and personal that a man can possess ; it includes every variety of assets subject to administration. 1 Bouvier's Law Dic. 370, Title "Estate," 8 Vesey's Rep. 604–8; Barnes *v.* Patch. And the commission to be allowed for the services is to be on the estate administered, not the personal estate, not the portion in the inventory, nor any other part, but on the whole amount. Ah, but exclaim the opposite counsel, you leave out the word "appraised ; " what do you do with this most important adjective ? To this question we think we can give a most satisfactory answer.

In the first place, we say that this word "appraised," upon which the whole argument and doctrine of the gentlemen stand, means no more than the word "ascertained" or "assessed," prefixed to the word "value," would mean. The verb to appraise, means to appreciate, to ascertain the worth, to fix the value; and in this provision of the law it means no more nor less than that the probate court shall, in settling the compensation, fix or ascertain the value of the estate, without pointing out any particular mode. It may be done by reference to the inventory, if that contain all the estate administered; or by the proceeds of sales, if that embrace the whole of the estate; or by the amount of assets accounted for in the final account of administration, which is the usual mode, and as correct as any that can be adopted, or by any proofs or mode that the court, in its plenary powers over this subject, may choose to adopt, consistently with the ordinary rules and practice of the courts of this state. For this appraised value, this ascertaining of the amount of the estate administered is to be made by the court at the time and for the purpose of fixing the commission or compensation. And the court is to do this upon the final settlement, when the whole estate has been administered, when the court has a full view of all the services of the executor or administrator before him, and in closing the estate can do full justice between the estate and the representative, which the court could not do if bound by the value of the property as contained in the inventory, for it might be greatly deteriorated, it might not have sold for any thing like the appraisement, it may have perished before it could be fully administered, and a per cent. on the inventory in such case might be too great a compensation. And in the latter instance it would not have been administered, and the statute in

such a case, according to the construction of the opposite counsel, would involve a palpable contradiction, an inconsistency.

But the construction for which we contend involves no inconsistency, every word remains, and this is the correct mode; "*ut res magis valeat quam penat.*" 1 Black. Com. 88. For the language of the statute is, that the court shall allow for his or her trouble in administering the estate, not exceeding ten per cent. on the appraised value of such estate, such referring to the previous word estate, and that being the estate administered. But, according to the argument of the gentleman, you must leave out the words, "administering the estate," and the words "such estate," and interpret the words "appraised value" as meaning the appraisement of the prior property contained in the inventory, without regard to the estate administered or the word such estate at all. And no motive has been or can be shown to have existed in the mind of the legislature for such legislation, furnishing such a partial and unjust standard for fixing the compensation of those administering estates. On the contrary, we have shown that reason, justice and common sense are in favor of the rule for which we contend.

We recognize the general rule that one part of a statute may be construed by another part, and that if possible every word and sentence shall stand; and we insist upon this in the present instance. Now we have not been able to ascertain that there is any technical or statutory meaning attached to the words "appraised value." We have not been able to find these words used in any other portion of our probate law except once. Wherever the personal property contained in the inventory is referred to, the reference is to the inventory and appraisement. Rev. Code, 48, sec. 71. And this inventory is made not to fix a rule for the compensation of the executor or administrator, but that those interested may know the extent of the personal estate. So, as evidence in any suit by or against the representative, the language of the statute is, that the "inventories and appraisements," &c. may be used. Rev. Code, 49, sec. 77. One of the conditions of his bond is, that he shall return a true and perfect inventory of the personal estate, not the "appraised value" thereof. We recollect but one instance in which this phrase is used in our probate law, Rev. Code, 60, sec. 109, and that is prohibitory of the representative taking the

Merrill, Appellant, *v.* Moore's Heirs.

estate or any part at the appraised value.  But suppose he took a part not appraised at all, why, according to the gentleman's argument, he might do so, and we presume pay nothing for it.  *Quia hæret in litera hæret in cortice.*  In all other portions of this law, according to our recollection, the inventory is referred to by name when the legislature refer to that source for any purpose.

Again: the section of the statute allowing the compensation, provides for the increase as well as decrease of the estate under the management of the representative; and can it be supposed that the law-maker overlooked all compensation for administering this increase, in the very same section, too?  Besides, the 43d section of the orphans' court law, contained in the Rev. Code, p. 40, provides for the distribution of the whole of the estate, both real and personal, (not devised or bequeathed;) and the executor or administrator shall administer the same.  Then, we think, the interpretation which we contend for is the clear, just and sensible one, recognized by all the courts, and must prevail.  If any thing could add strength to this view of the subject, it would be found in the will of Robert Moore, forming a part of the record in this case.  It provides for the payment of the debts out of the crops, and directs that his plantations of lands and negroes shall be kept together and cultivated for that purpose, and the benefit of his children, till they shall arrive at age.  This the administrator did for upwards of ten years, and then a sale became necessary, and was accordingly made under the order of the probate court; and the estate, thus administered, nearly quadrupled the amount of the inventory.  Why, the direction of the will itself would authorize such an allowance of commissions as we claim, independently of the statute upon the subject.

On a question of this kind, growing out of the phraseology of our statute, few authorities will be found bearing directly upon the point.  But we refer the court to the following, which we conceive to be directly in point—a decision of the supreme court of appeals of Virginia, from which state we have borrowed more of our legislation than from any other state in the union.

4 Munf. Rep. 83, Hopkins *v.* Barnane.  This authority shows that the executor is entitled to a commission on the sale of crops, money on hand at the death of the testator, &c. establishing the

very doctrine for which we contend, in every respect. By this authority, he is entitled to a commission for simply turning bonds into mortgages for the estate.

Besides, Dr. Merrill acted not only as administrator, but as guardian, and, as such, is entitled to commissions, independently of his services as administrator. 1 Munf. Rep. 156, &c.

We conceive that the authority cited is much more applicable than the one so much relied on by the opposite counsel, in Hopk. Rep. 28, the case of McWhorter v. Benson. We admit the law contained in that authority, but it has no application to this case. We admit that where the legislature has fixed a rule or standard, or authorized a court to fix it, and it has been done, by which the compensation of an executor is to be ascertained, no court will depart from it; and that is the whole of the authority.

But this is not the question we are discussing. The question with us is, what rule or standard has the legislature of *this* state furnished *us?* If our law had provided a commission on the amount of the *inventory*, a technical phrase of definite meaning, then there would be some plausibility in the gentleman's authority and argument. But, to apply the gentleman's authority to our statute, now existing, is begging the question and *then* citing authority. And this view of the case is decisive when we refer to the provision of the *same* statute regarding the compensation of the collector of a deceased's estate. Rev. Code, p. 39, sec. 40, or How. & Hutch. 393, sec. 26. Upon the collector collecting and accounting to the executor or administrator, the court may allow him thereon not exceeding five per cent., or a commission not exceeding three per cent. on the whole inventory. Now, according to every rule of construction, if the legislature meant the inventory, in fixing the commissions of the executor or administrator, that word would have been used.

We now come to the second question of importance involved in this case; and that is the *time* the allowance of commissions to the administrator shall take effect in the account—a most important question, indeed, to us, in consequence of the commissioners compounding the interest, on making out the account, with annual rests; for, if the commissions had been allowed to Dr. Merrill as we contend, to take effect when he settled his accounts annually

Merrill, Appellant, *v.* Moore's Heirs.

in the probate court, and as that court *then* allowed them, instead of there being a balance of fourteen thousand dollars against him, according to the decree of the probate court, there would not have been a difference, either way, of four thousand dollars, as a calculation will readily show to any one. And so struck were the commissioners or referees with the propriety and justice of this course, that, in their report, they emphatically recommend it to the court, showing that, if they had conceived they were authorized to act upon the subject of the compensation, they would have adopted it. And no other plan as to the times the allowance of commissions shall take effect, can be pursued without doing the rankest injustice to the administrator, in letting an account stand settled, computing interest with annual rests. The compounding of the interest by the commissioners, in the account taken by them, was wholly inadmissible on every principle of law or equity, and only by consent in this case. 1 Am. Eq. Dig. 513, secs. 1, 7, 17; do. 516, secs. 31, 34, 35; 2 J. J. Marsh. 512; 4 do. 50; Litt. Sel. Ca. 475; 5 Mon. 578. And if the commissions are not to date from the time, as the accounts were annually allowed in the probate court, this mode of computing interest would operate as a fraud on us under the agreement. And if this mode of computing is to stand, it must be by operating at the same time justly, and in the mode contemplated by the commissioners, on the administrator—and that is, that the compensation allowed him shall take effect at the time the services were rendered, from year to year. The laborer's hire is due at the time it is earned; and if this rule is not to prevail, and the views of the commissioners are to be disregarded in this respect, then we insist that the whole account shall be sent back to them to be restated; for they never would do so much violence to the justice of the case, appearing by their own showing in the record, as to compound interest for years against an administrator, and his commissions for services rendered during those years not to be brought into the account in this compounding—otherwise most flagrant injustice would be done, from a technical rule of law, in regard to one part of the account, when all the other parts of the account were governed by the most liberal rules, and according to the true spirit of the

agreement of the parties, and to the object of the reference of the whole subject to Henderson and Watt.

But what provision of our statute, is it contended, forces from the court such a construction under the circumstances of this case? It has already been read. See Hutch. & How. 414–15, sec. 96, 101, or Rev. Code, page 64, sec. 120. The provision is that the court shall allow, upon the final settlement of the account, such compensation as shall appear to the court to be reasonable and just. Now if the court will bear in mind the rules which we have laid down for our guide in interpreting statutes, (and in support of which all the authorities sustain us,) and will also bear in mind the circumstances of this case, the recommendation of the commissioners arising from their mode of stating the account, we apprehend there can be no serious difficulty on this point. The executor or administrator *is to* be allowed such compensation as shall appear to the court reasonable and just. Whatever he may be entitled to, it is reasonable and just that it should take effect or date at the time it accrued, and more especially as he is charged with compound interest in the account, which would be justly balanced by the allowance t.) the amount of the allowance, as we contend for. But the answer to this is, that this reasonable and just allowance is to be on the final settlement. Be it so. The allowance is then made, but it is not reasonable or just that it should date from that period alone in this case, or any case where interest at all is calculated in stating the account. It would in our opinion, be sticking in the bark of this provision of the law with a vengeance, to interpret it that the allowance of the compensation is to date the period of its taking effect in all cases, under all circumstances. It is true the allowance is then to be finally made, for then the court have before them all the estate as administered, and a full view of the services rendered in the administration from the grant of letters to the discharge of the executor or administrator, and full justice can be done by the court both as regards the services of the representative throughout, and the interests of the estate. The commissions allowed from year to year are the settlement of the annual account, and which had been the practice of the court from its organization to allow, are then subject to review, like every other item of any previous account

which may have been settled, and may be modified in any manner, that to the court on the final review of the entire administration shall seem reasonable and just. But the interest that may accumulate on commissions allowed at the time the services were rendered and the item of commissions themselves would be no more changed on the final settlement, than any other item that may have been properly allowed. It might just be as well contended that all the items in previous accounts should only take effect upon the final settlement, inasmuch as they are all brought again before the court for its final action, or that the judgment of a court on any claim, or the verdict of a jury, should not allow or admit of the previous interest due on such claim, because it was only adjudicated on at the time of the allowance. Take the case of an insolvent estate as an example. The commissions must be fixed before the final settlement, for how can the dividend to general creditors be ascertained till these commissions and all expenses and privileged claims are deducted. And all this must be done and creditors paid before the final account can be rendered, and it shows the absurdity and impracticability of the rule contended for.

Again: According to the gentleman's doctrine, commissioners appointed to examine and allow claims on an insolvent estate, could not allow the claim to take effect from its maturity or to bear interest from its maturity till the time it was allowed, and that the date of allowance must fix simply the original amount, regardless of the time of its accrual, interest and every other consideration. But such a doctrine cannot prevail in the one case or the other. Upon this point we will refer to authority to show that commissions for services should be paid or allowed in account when the services are rendered. Joseph Walker's estate, 9 Serg. & Rawle, 223, 226; 3 Munf. 29, 42; 1 *Ib.* 156.

We conclude then that upon a fair construction of this law, regarding the mode in which the referees stated the account, compounding interest, the commissions to Dr. Merrill as compensation, must take effect at the time he was entitled to them by his services, at the period those services were rendered; and if the items on one side of the account bear interest, so are these items of commissions to bear interest in like manner. This is the true spirit of this law; it is in accordance with the agreement of reference made be-

tween the parties, and the report and recommendation of the referees.

In discussing this case we have in our language referred particularly to Robert Moore's estate, believing it more simple and less likely to confuse than to refer at the same time also to the estate of James Moore. We now do so to call the attention equally to that estate with that of Robert Moore; being equally important to us, and our argument applying, if possible, more strongly to James Moore's than to Robert Moore's estate. For the record will show that it was only by agreement of the parties that the estate of James Moore could be brought in for the settlement of Robert Moore's estate. When this was done, the referees stated the account by compounding interest, which was not agreed to in regard to this estate of James Moore. They then fixed upon the commission in stating the account to fix the dividend; but the court would not even abide this action of the commissioners, but set it aside, deciding that nothing could be done on the subject of commissions but in the final settlement, and then only on the inventory of sixteen thousand seven hundred and twelve dollars; whereas the assets administered amounted to seventy-four thousand five hundred and twelve dollars and twenty-two cents. This was a violation of the intent and spirit of the agreement, which intended all these matters to be definitively settled by these referees. And besides, this action of the referees upon the subject of James Moore's estate shows that if the whole matter were referred to them again, as we contend it ought to be, they would allow commissions on the amount of the assets administered, to take effect at the times the services were rendered.

And upon a full view of every feature of this case, and in the true spirit of the agreement of the parties for the reference for the settlement of the accounts, we trust the court will come to the conclusion, that the referees ought to act on and settle the question of Dr. Merrill's compensation upon both estates, both in regard to the amount and time of the allowance.; and refer the subject back to them accordingly, as provided for by the agreement of counsel, and stated in the record.

At the same time we trust that, whether the court adopts this

course, or refers the matter back to the probate court, or acts definitively upon the subject of commissions and fixes the same by the judgment of this court, the court will settle the important questions we have been discussing. It is time it should be done, if the opinions of the judges, courts, lawyers and citizens of the state have been all in error heretofore. But we have no fear of such a result, that would prevent any honest and responsible person from administering upon an estate. The compensation the administrator receives, according to our understanding of the law, as it has been recognized and interpreted ever since its adoption, is small and scanty enough for such delicate situations, such important and responsible trusts, especially in this country, where every heir, on arriving at age, thinks the administrator, executor or guardian must have a fortune for him, or have been guilty of gross dishonesty and mal-administration, no matter how insolvent his father's estate may have been, or how well it may have been administered. Let the law, therefore, remain as it has in practice from time immemorial in this state.

We cannot doubt, then, that, under all the circumstances, the court will reverse the decree of the probate court, for the various errors we have assigned, with such instructions as will insure justice, common justice to our client in this case, touching his administration of both estates; and that the construction of our statute will be fully settled by this tribunal, in consonance with sound reason, common justice and the obvious spirit of the law which must have governed the legislature in its passage.

MONTGOMERY for appellees.

As to the first inquiry, we would suppose that the language of the statute on this subject was free from ambiguity and uncertainty. It is that, "no allowance shall be made to any executor or administrator for the management of any estate, but by the county court of his county, which then, on the final settlement of such estate, shall not be less than one, nor more than ten per centum on the appraised value thereof." How. & Hutch. 415, sec. 101. The language of this section does not vary materially from the ection of the act of 1822, on the same subject. *Ib.* 414, sec. 96.

Both statutes provide that the allowance shall be a per centum on the "appraised value of the estate."

The question raised is, what is meant by the appraised value? We contend its meaning is fixed by the same statute.

It is made the duty of administrators, &c. to return an inventory of the estate to the office granting administration. And provision is made for ascertaining the value of the personal estate by appraisers appointed by the court, whose duty it is to appraise all the goods and chattels and personal estate, and certify the same. How. & Hutch. 400, sec. 52, 53, 54. As a general rule, the administrator has no right to meddle with any of the assets of deceased, except such as are required to be appraised and inventoried by the preceding sections. He has no right under the statute, or common law, to carry on the business of the deceased; and if he do so, it is a voluntary trust, assumed against law and without authority, and he has no claim either on the courts or the parties for compensation. The statute which prescribes a per centum on the appraised value of the estate as the measure of compensation, also makes it the duty of the executor or administrator to cultivate and sell the growing crop. How. & Hutch. 402, sec. 63. As this statute makes the growing crop assets, it is equivalent to declaring it personal estate; and it is the duty of the administrator to include it in his inventory of appraisement, by which he would secure the per centum on it for administering: but if he voluntarily neglect to have that or any other part of the personal estate appraised, he has no right to complain if he lose his commission on it. The court can only look at the inventory to ascertain the appraised value of the estate.

We admit there are additional duties imposed by statute on administrators, to those of administering the personal estate. In the case of the insolvency of the estate, or the insufficiency of the personal estate to pay the debts, it is made his duty to sell the real estate, and apply the proceeds to the payment of debts: and it is supposed the administrator is entitled to extra compensation for these additional services. As these duties are imposed by the same statute which prescribes the compensation to be allowed, we must presume the legislature, in fixing the mode of ascertaining the amount of compensation to be made, had such extra ser-

*Merrill, Appellant, v. Moore's Heirs.*

vices in view; and that the latitudinous discretion given the court, varying from one to ten per cent., was designed to enable the courts to compensate the administrator for such services. If the legislature had designed or contemplated any further allowance than a commission on the appraised value of the estate, it would have been quite as easy, and much more satisfactory, to have used less restrictive language.

It was not to be expected that the legislature could foresee and provide for all the services which an administrator might render an estate. And we must presume that they adopted, as a measure of compensation, a per centum on the appraised value of the estate, as the most likely, under the discretion allowed the court, to afford a full compensation to an administrator for all his services. 1 Hopkins, 28; 4 Dessaus. 463; 2 Mun. 331; 2 Paige, 287.

There are often very onerous duties imposed on executors, by will; but these are always regarded in the light of trusts, for the performance of which the executor cannot claim compensation. See 2 Hen. & Mun. 21, & 4 Munf. 83.

The common law rule appears to be well settled in England, and several of the states of the union, that a trustee, executor or guardian, cannot claim compensation for his trouble in executing the trust. And the cases in which the sale has been asserted and acted on by the courts, present much stronger grounds for the indulgence of liberality than the one now under consideration. 1 John's Chan. Rep. 527.

2. When is he entitled to receive this compensation?

We would suppose without judicial legislation there could be but one answer to this question. The statute says "on the final settlement of such estate."

It is a matter of discretion in an administrator to settle an estate any time after three years, if he thinks proper: after that period no claims can come against him, unless he had notice of them. And if he do not convert the funds of the estate to his own use, he is not legally liable to pay interest on them: but if he use the funds, and is charged with nine or ten years interest, that is no reason why he should be credited with commissions at the time he ought to have settled his account. Merrill, it appears by the record, always represented the estate as indebted to him. Upon

25*

re-stating the account; the auditors changed the balances to the other side of the account, and now he complains that he has not been allowed commission from the time he ought to have closed his administration account, with interest, as charged in the account by the auditors. If it was an object to have his commissions allowed, why did he not make a final settlement, and claim his commissions when he had finished the administration? Why did he keep his accounts open? And why did he always render false accounts?

3. What rate of compensation has the court discretion to allow?

This question appears as fully answered by the statute as the last. We are aware that the courts of some of the states have allowed administrators' extra compensation for extra services, not in the contemplated course of administration, and apparently not provided for in the general provision fixing their compensation. All such decisions, however, are based on some custom or practice of the state amounting to a change of the common law, or on an application of the equity of the statute to the peculiar case. And it is not contended in any of them that the common law allows any such compensation.

The statement in the record that the probate court of Adams county, ever since the passage of the statute, has been in the habit of allowing commission on each account, and that on all the assets accounted for in the account, whether from sales of real or personal estate, or the rents and profits of land, or the profits of the business of the intestate continued under the management of the administrator, can have no influence on the *question.* The decisions of the supreme judicial tribunals of the state should be adhered to, even if upon full investigation they are ascertained to be erroneous, but the decisions of an inferior court can never be regarded as precedents, and no time or acquiescence of parties can sanction an erroneous train of decisions of an inferior court. Upon doubtful questions of construction, the action of the courts, inferior as well as supreme about the time of the passage of the law and for a long period subsequent, may be taken into consideration as guides to a fair understanding of the intention of the legislature; but then they are only regarded as arguments, not precedents.

Merrill, Appellant, *v.* Moore's Heirs.

Although there may be cases which would loudly call on the sense of justice of the court to allow an extra compensation to an administrator; as where he had received the estate in embarrassment, and by good management and the performance of extra services, had not only relieved it from embarrassment but greatly increased the amount; yet this case is not one of them.

It appears from the record that Merrill constantly represented this estate as indebted to him, including his final account, and the auditors, upon restating the account, brought him indebted to the estate over twenty-four thousand dollars.   Allow him all the commissions charged in his account, with interest, as he claims, and still he would be indebted to the estate over ten thousand dollars. He must have rendered false accounts, or this result could not have happened.

His administration of James Moore's estate is still more plainly fraudulent.   In his last account on that estate he represented only two hundred and sixty-three dollars in hand, to be distributed among creditors; yet the auditors, upon restating those accounts, without deducting his commissions, report that he had surplus funds sufficient to pay R. Moore's estate over three thousand four hundred dollars.   Such gross errors as these do not happen accidentally.   These facts show that so far from having any claim on the equitable consideration of the court, he is obnoxious to the severest animadversions.   Instead of the liberal fortune he claims out of the estate of the testator, his conduct would seem to present strong claims to a cell in the penitentiary.

BOYD on the same side.

Mr. Justice CLAYTON stated the case and delivered the opinion of the court.

Two questions are presented for our determination:   1. What shall be the measure of compensation to an executor or administrator?   2. And when shall that compensation be received?

The decision must rest upon a fair construction of our statutes. One of the first duties of an executor or administrator is, to make an inventory of the goods chattels and credits of the deceased. Appraisers are to be appointed by the court at the time the letters

are granted, whose duty it is to appraise the goods, chattels, and personal estate of the deceased; their return of this, together with the return of the administrator usually contained in one instrument, constitutes the inventory and appraisement. In addition to this, the administrator should return an account of the money on hand, and a list of the debts due to the estate; these form the credits, which are not required to be appraised, for very obvious reasons. After the return of the first inventory, if other assets come to his hands, it is his duty to make return of them. If it be requisite to sell the real estate, the probate court may grant him leave to do so, and he must report the amount and terms of sale to the court. In this last instance no appraisement is directed— the sale itself is the appraisement. This is a summary of the duties of the administrator, and it will be seen that much of his duty, and often the most intricate and laborious part, relates to portions of the estate which are not required to be appraised.

The two sections which relate to the compensation of the executor or administrator, are the 96th and 101st of the law in regard to the estates of decedents. How. & Hutch. 414, 415. The former is in these words: "In all cases the court shall allow to an executor, or administrator, or collector, on the final settlement of his or her account, such compensation as shall appear to said court reasonable and just, for his or her trouble in administering the estate of the testator or intestate, not less than five nor exceeding ten per cent. on the amount of the appraised value of such estate." The other section is almost in the same language, but it directs the allowance to be not less than one nor more than ten per cent. on the appraised value.

Does this language so limit the allowance to the administrator that it can be made only on that part of the estate which is appraised? Other portions of the estate which are not required to be appraised, but which must be administered, are equally within the reason, spirit and intention of the law.

A case now in this court forcibly exemplifies the injustice of confining the compensation to a commission upon the appraised value of the estate. The estate has been in the hands of the administrator for many years; its appraised value, beside some fifteen or eighteen slaves, was less than five hundred dollars; the amount

of assets, exhibited on the final settlement, exceeds one hundred and fifty thousand. This increase does not result from a defective inventory in the first instance, but from a gradual increase of the property under careful management. To give the administrator ten per cent. on the original appraised value of this estate, as his compensation, would look like a mockery of justice. It is wrong to impose onerous duties upon men, and to deny them compensation for their discharge. Such a rule would tend strongly to make them negligent in the performance of the trust, or to make them seek indemnity in some other way. We believe that the words, "appraised value," were intended to cover the whole estate administered, and were thought to do so at the time.

We think, therefore, that the allowance in this case should be made to extend to the whole estate administered, as evidence by the several inventories and accounts rendered by the administrator from time to time, in which he has charged himself with the amounts which have come to his hands. It should not be confined to that portion of the estate which has been appraised, and the administrator forced to a gratuitous administration of the balance.

This allowance, however, can only be made upon the final settlement of the estate, and should stand as a credit to the administrator as of that date.

The same principle and rule are applicable to the administration of Merrill upon the other estate of James Moore, which is incidentally connected with that of Robert Moore. The same decision is made in reference to it. These seem to be the only points on which the opinion of this court is sought.

The decree of the probate court will be reversed, and the cause remanded, with directions to that court to allow the administrator as compensation such commission, not less than one nor more than ten per cent., as shall seem to said court reasonable and just, upon the whole amount of assets administered, not merely the appraised value; but the allowance to be made as of the date of the final settlement.

Judgment reversed.